UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RICHARD DESCLAFANI,

                      Plaintiff,

- against -

PAVE-MARK CORPORATION, STIMSONITE
CORPORATION, STIMSONITE CORPORATION,
as successor in interest to PAVE-MARK CORPORATION,
AVERY DENNISON CORPORATION and AVERY
DENNISON CORPORATION, as successor in interest
to STIMSONITE CORPORATION,

                      Defendants.
------------------------------------------------------------------X

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS STIMSONITE CORPORATION AND AVERY DENNISON CORPORATION**

07 CIV 4639 (SHS)(HP)

PLEASE TAKE NOTICE, that upon the annexed memorandum in support of motion from John P. Connors, Jr., dated November 20, 2007, and upon all the pleadings and proceedings heretofore had herein, before the Honorable Sidney H. Stein at the United States Courthouse for the Southern District of New York, pursuant to Rule 56 of the Federal Rules of Civil Procedure, move this Court for an order granting summary judgment to Stimsonite and Avery Dennison and dismissing Plaintiff's claims against them on the ground that neither Stimsonite nor Avery Dennison is a successor to the historic liabilities of Co-Defendant Pave-Mark Corporation. The points and authorities in support of this motion are more fully described in the memorandum in support being filed herewith.

Dated: Staten Island, New York
        November 20, 2007

                                              _____
                                              JOHN P. CONNORS, JR. (6514)
                                              CONNORS & CONNORS, P.C.
                                              766 Castleton Avenue
                                              Staten Island, NY 10310
                                              (718) 442-1700

JOHN M. ALTEN
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
Tel.: (216) 583-7000
Fax: (216) 583-7001

Attorneys for **Defendants**
**STIMSONITE CORPORATION and**
**AVERY DENNISON CORPORATION**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RICHARD DESCLAFANI,

        Plaintiff,

- against -

PAVE-MARK CORPORATION, STIMSONITE
CORPORATION, STIMSONITE CORPORATION,
as successor in interest to PAVE-MARK CORPORATION,
AVERY DENNISON CORPORATION and AVERY
DENNISON CORPORATION, as successor in interest
to STIMSONITE CORPORATION,

        Defendants.
------------------------------------------------------------------X

**LOCAL RULE 56.1
STATEMENT OF
FACT NOT IN DISPUTE**

07 CIV 4639 (SHS)(HP)

1. Plaintiff was employed by Iberia Road Markings Co. On June 4, 2005.

2. Plaintiff was using a kettle manufactured by Pave-Mark Corporation.

3. The kettle was manufactured by Pave-Mark Corporation in or about 1991.

4. Until the early 1990s, Pave-Mark Corporation was a privately owned business.

5. In 1995, Stimsonite bought substantially all assets of Pave-Mark Corporation.

6. Stimsonite pursuant to an Asset Purchase Agreement did not assume tort liabilities of Pave-Mark Corporation related to products sold prior to the date of the Asset Purchase Agreement.

Dated: Staten Island, New York
   November 20, 2007

                 */s/ John P. Connors, Jr.*
                 JOHN P. CONNORS, JR. (6514)
                 CONNORS & CONNORS, P.C.
                 766 Castleton Avenue
                 Staten Island, NY  10310
                 (718) 442-1700
                 Our File No.:DBS23483

JOHN M. ALTEN
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
Tel.: (216) 583-7000
Fax: (216) 583-7001

Attorneys for **Defendants**
**STIMSONITE CORPORATION and**
**AVERY DENNISON CORPORATION**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RICHARD DESCLAFANI,

                        Plaintiff,

   -against-

PAVE-MARK CORPORATION, STIMSONITE
CORPORATION, STIMSONITE CORPORATION,
as successor in interest to PAVE-MARK CORPORATION,
AVERY DENNISON CORPORATION and AVERY
DENNISON CORPORATION, as successor in interest
to STIMSONITE CORPORATION,

                        Defendants.
-------------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS STIMSONITE CORPORATION AND AVERY DENNISON CORPORATION**

07 CIV 4639 (SHS)(HP)

## OVERVIEW

Defendants Stimsonite Corporation and Avery Dennison Corporation did not assume the liabilities of Pave-Mark Corporation related to Pave-Mark-made products, such as the kettle at issue in Plaintiff's Complaint, manufactured prior to the early 1990s. The 1995 Asset Purchase Agreement between Pave-Mark and Stimsonite clearly provided that Stimsonite *did not* assume prospective liability for later-arising claims stemming from already-sold Pave-Mark products. Further, because the Pave-Mark-Stimsonite asset purchase was an arm's-length transaction by which Pave-Mark's majority ownership exited the marking business, Plaintiff lacks any basis to claim that the exceptional "de facto merger" doctrine applies here. On these facts, Stimsonite and Avery Dennison are entitled to summary judgment dismissing Plaintiff's claims.[1]

---

[1] Defendants are filing a Stipulated Motion to Stay Merits Discovery so that this threshold question of successor liability can be determined by the Court. The parties agree that it would be a waste of the parties' and the Court's resources to develop discovery regarding the substance of Plaintiff's product liability claim when a ruling in favor of Avery Dennison and Stimsonite on the successorship issue may render further proceedings moot.

1

## SUMMARY OF UNDISPUTED FACTS

According to Plaintiff's Complaint, Plaintiff was working for Iberia Road Markings Company ("Iberia") in Brooklyn, New York, on June 4, 2005, when he was injured while using a kettle manufactured by Pave-Mark Corporation. (Complaint, ¶¶ 25-86 (stating that Pave-Mark was the manufacturer of the kettle at issue).)[2] The Complaint only alleges liability against Stimsonite and Avery Dennison under a successorship theory, alleging that each is a successor in interest to Pave-Mark because Stimsonite "acquired" Pave-Mark and Avery Dennison subsequently "acquired" Stimsonite. (Complaint, ¶¶ 21, 25.)

As of the late 1980s and early 1990s, Pave-Mark was a privately owned corporation principally owned and controlled by Marty Smith and his family. (Thomas C. Ratchford Decl., Exhibit 1 hereto, ¶5.) Not surprisingly, Pave-Mark manufactured and sold equipment used to mark pavement. (Ratchford Decl., ¶3.) As of 1995, Stimsonite was a public company in the business of manufacturing and selling reflective highway products. (Ratchford Decl., ¶2.)

In 1995, Stimsonite agreed to buy substantially all of the assets of Pave-Mark. The parties entered into an Asset Purchase Agreement ("APA") dated April 28, 1995, and effective as of May 31, 1995. (Asset Purchase Agreement, Exhibit 1 to the Ratchford Decl.) In the APA, the parties specifically agreed that Stimsonite *was not* assuming tort liabilities related to products sold by Pave-Mark prior to the APA:

> ARTICLE II.  RETENTION OF LIABILITIES
>
> 2.1  Retention of Liabilities.    Except as otherwise provided in Section 2.2, at the Closing, Seller and the Stockholders shall retain, and Buyer shall not assume, or be responsible or liable with respect to, any liabilities and obligations of Seller or the Stockholders whether or not relating to the Business or the Acquired Assets, whether fixed, contingent or otherwise, whether

---

[2] The kettle was manufactured by Pave-Mark in or around 1991, as confirmed by records provided by Iberia. (See Exhibit 2 hereto.)

2

> known or unknown and whether incurred prior to, at or subsequent to the Closing Date (collectively, the "Retained Liabilities"). Without limiting the generality of the foregoing, the Retained Liabilities shall include the following:
> …
> (f)  <u>Litigation.</u> Any liability or obligation relating to any claim, suit, litigation, proceeding or investigation pending on the date hereof, or instituted hereafter, that is based in whole or in part on events or conditions occurring or existing in connection with, arising out of, resulting from, or relating to, directly or indirectly, the operation of the Business prior to the Closing Date, or the ownership, possession, use or sale of Acquired Assets prior to the Closing Date;
>
> (g)  <u>Product, Environmental and Safety Liability.</u> Any claim, liability or obligation (including, without limitation, fines, penalties, punitive damages, legal fees and expenses, and all other damages and losses), irrespective of the actual or alleged basis therefore, that is based in whole or in part on events or conditions occurring or existing prior to the Closing in connection with, arising out of, resulting from or relating to, directly or indirectly, (I) Product Claims (as defined in Section 6.1 ®)), (ii) any applicable laws regulating or establishing quality criteria or standards for air, water, land, noise or industrial safety and health, providing for remediation of environmental conditions or otherwise relating to the environment, whether existing as of the date hereof or subsequently amended, enacted or promulgated, (iii) employee health and safety or (iv) compliance with any laws or regulations relating to any of the foregoing;

(APA, p. 6.) In Section 6.1®) of the APA, Pave-Mark warranted that it was not aware of any "Product Claim" by which someone contended that any Pave-Mark product was defective or subject to a product recall. (APA, p. 27-28.)

In consideration of selling Pave-Mark's assets to Stimsonite, Pave-Mark's stockholders received cash exceeding $6 million. (APA, p. 9.) The APA did not give Pave-Mark stockholders any ownership interest in Stimsonite going forward. (APA, *passim*; Ratchford Decl., ¶8.) The transaction was not intended to be a merger masquerading as an asset purchase. (Ratchford Decl., ¶8.)

3

In 1999, the assets of Stimsonite were acquired by Avery Dennison. The assets that were historic Pave-Mark assets were subsequently sold off by Avery Dennison to yet another company. The specifics of the Stimsonite-Avery Dennison asset purchase and any further downstream transactions are not at issue in this motion because if Pave-Mark's unmanifested liabilities were not transferred forward to Stimsonite, Stimsonite could not have subsequently transferred those liabilities to Avery Dennison.

## LAW AND ARGUMENT

### I. Summary Judgment Standard.

Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); SCS Communs., Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The inquiry involves "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (internal citations omitted). The non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).

## II.    Plaintiff Bears The Burden Of Demonstrating Successor Liability.

A plaintiff seeking to ascribe liability to a company based on a claim of successor liability bears the burden of demonstrating that successor liability will lie. Heights v. U.S. Electrical Tool Co., 138 A.D.2d 369, 370 (2nd Dept. 1988); W.R. Grace & Co. v. Zotos Int'l, Inc., 2000 U.S. Dist. LEXIS 18091, *12 (W.D.N.Y. 2001)(opinion attached). Plaintiff cannot meet this burden, and there is no genuine issue of material fact regarding Stimsonite's and Avery Dennison's non-liability for Plaintiff's alleged injuries.[3] Plaintiff must marshal evidence demonstrating that Stimsonite succeeded to Pave-Mark's later-arising tort liability, and he cannot.

## III.    Stimsonite Neither Expressly Nor Implicitly Assumed Responsibility For Later-Arising Product Liability Claims Related To Old Pave-Mark Products.

Stimsonite can only be liable for Plaintiff's putative claims if Stimsonite (1) expressly assumed these types of liability from Pave-Mark in the APA, or (2) circumstances exist that would allow a Court to disregard the parties' intent and impute these types of liability to Stimsonite regardless of the parties' expressed intentions in the APA.

### A.    Stimsonite Did Not Assume This Prospective Liability.

Two separate sections of the APA provided that prospective liability for products sold before May 31, 1995, was retained by Pave-Mark and not assumed by Stimsonite. Section 2.1(f), concerning "Litigation," stated that "any liability" for "any claim … that is based in whole or in part on events or conditions occurring or existing in connection with, arising out of, resulting from, or relating to, directly or indirectly, the operation of the Business prior to the Closing Date" was a Retained Liability and was *not* assumed by Stimsonite. Section 2.1(g) separately excluded any assumption of liability for "Product Claims," which also encompasses Plaintiff's claim here.

---

[3] The merits of Plaintiff's product liability claim are outside the scope of this motion. Stimsonite and Avery Dennison deny that any product claim will lie here and reserve all of their rights vis-à-vis the merits of Plaintiff's claim and his alleged damages.

5

Simply put, the APA clearly (and with redundant language) bars Plaintiff from contending that Stimsonite assumed liability for Plaintiff's putative claim here.

### B.    Plaintiff Cannot Point To Any Reason To Ignore The Clear APA Terms.

Just last year, the U.S. Court of Appeals for the Second Circuit issued a substantial opinion discussing the issue raised here: When, if ever, can a purchaser under an asset-purchase agreement be deemed to succeed to the seller's liabilities when the agreement itself provides otherwise? See State of New York v. National Serv. Indus., Inc., 460 F.3d 201 (2d Cir. 2006). In National Serv. Indus., the State of New York sought to ascribe liability for environmental cost recovery to a company that had purchased the assets of an alleged polluter. Id. at 203. Presented with a choice-of-law question, the court considered both New York law and federal common-law approaches to successor liability and found that both preclude any implied assumption of liability absent extraordinary circumstances. Id. at 203-207.

The Second Circuit noted that, under either New York law or "traditional" common law, "a corporation that purchases the assets of another corporation is generally not liable for the seller's [tort] liabilities." Id. at 209 (citations omitted). The following exceptions apply under New York law:

(1) if the buyer expressly assumed the seller's tort liabilities;

(2) if there was a merger rather than an asset sale;

(3) the purchasing corporation was a mere continuation of the selling corporation; or

(4) if the transaction is entered into fraudulently to escape prospective tort liability.

6

Id.[4] The Second Circuit recognized that, while the New York Court of Appeals has never addressed the issue, a consensus of lower courts had held that a purchasing corporation can become liable for the tort liability of a selling corporation where the asset sale is a "de facto merger." Id. ("A de facto merger occurs when a transaction, although not in form a merger, is in substance a 'consolidation or merger of the seller and purchaser.'") (citing Cargo Partners AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003)). The court observed four traits of a de facto merger: (1) continuity of ownership between selling company and buying company; (2) cessation of business and dissolution of the selling company; (3) assumption by the purchaser of the seller's ordinary operational liabilities; and (4) continuity of management, personnel, location, assets and general business operation. Id. (citing, inter alia, Fletcher Cyclopedia of the Law of Private Corporations § 7124.20 (3d ed. 2002) for the majority rule).

The defendant company in National Serv. Indus. argued that the absence of criteria No. 1, continuity of ownership, barred any claim by the State that a de facto merger had occurred. The plaintiff State argued instead that continuity of ownership (or lack thereof) was only one factor to be considered and that the lack of continuity of ownership was not an absolute bar to a finding of a de facto merger (and thus successor liability). The court spent several pages analyzing this argument under New York law, id. at 210-215, and all of the court's discussion need not be repeated here. The court noted that the continuity-of-ownership element is designed to identify situations where the shareholders of a seller corporation *retain* an ownership interest "in their

---

[4] The inapplicability of exception No. 1 is discussed above. Exception No. 3 does not apply because the "mere continuation" exception, like the merger exception, requires a continuity of ownership, directors, etc. Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 F.Supp. 834, 839 (S.D.N.Y. 1977) ("A continuation envisions a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer.") With regard to exception No. 4, certainly Plaintiff lacks any evidence that the 1995 asset purchase was fraudulently concocted to avoid liability to Plaintiff or other end users more than a decade later.

7

assets after cleansing them of liability." Id. at 211 (citations omitted). The court refused the State's invitation to create different standards based on whether the underlying liability sounded in tort or contract, finding that the continuity-of-ownership criteria "serves the same purpose in tort cases, i.e., it distinguishes an asset purchase from a de facto merger." Id. at 211-212. The court *specifically considered and rejected* the State's arguments for crafting a more plaintiff-friendly rule for tort cases, holding that "continuity of ownership is the 'essence of a merger' and thus a necessary predicate to a finding of a de facto merger." Id. at 212 (citing In Re New York City Asbestos Litig., 789 N.Y.S. 2d 484, 487 (1st Dept. 2005)). The court *specifically rejected* adoption of the "product line" theory of successor liability whereby a corporation that buys another's product line and continues production of that line can be liable for an injury caused by a product even if it was produced by the predecessor corporation. Id. at 214 (noting that the New York Court of Appeals rejected the product line approach in Semenentz v. Sherling & Walden, Inc., 7 N.Y.3d 194 (2006)). New York law "does not find the public policy considerations at issue in tort cases sufficient to justify the departure from the common-law standards that would be necessary to find the existence of a de facto merger in the absence of any evidence of continuing ownership." Id. at 215. Thus, the Second Circuit held that absent evidence of continuity of ownership, there can be no de facto merger and thus no successor liability contrary to an asset-purchase agreement's express terms. Id.

All of the analysis contained in National Serv. Indus. applies foursquare here. There is no genuine issue of fact regarding the lack of continuity of ownership between Pave-Mark and Stimsonite. As described in the Statement of Undisputed Facts, supra, the Pave-Mark-Stimsonite asset sale was an arm's-length transaction designed, on the Pave-Mark side, to allow Pave-Mark ownership to "cash out" of the business. Stimsonite was and remained *a publicly traded* company. Pave-Mark's controlling family exited the business and retired with their asset-sale profits. No Stimsonite stock

8

was given in consideration. In light of these facts, neither Stimsonite nor Avery Dennison can be deemed successors to the type of putative liability described in Plaintiff's Complaint.[5]

## CONCLUSION

Plaintiffs have no basis to allege that Stimsonite and Avery Dennison are liable for Plaintiff's alleged injuries. The Pave-Mark-Stimsonite agreement clearly provides that liability for claims such as Plaintiff's were not assumed by Stimsonite. New York law provides no basis for ignoring the parties' agreement in this regard. For these reasons and in the interests of justice, the Court should enter summary judgment for Stimsonite and Avery Dennison dismissing Plaintiff's Complaint.

---

[5] While National Serv. Indus. renders equitable principles largely irrelevant, issues of fairness and business practicality cut in favor of Stimsonite and Avery Dennison here as well. As the case law acknowledges, there is nothing inherently nefarious about entering into an asset sale, and Plaintiffs certainly cannot contend that the Pave-Mark-Stimsonite transaction was nefariously concocted to avoid liability in a product liability lawsuit filed in 2007, roughly 17 years after the relevant product was sold and 12 years after the APA. Moreover, as this case itself evidences, it would be very difficult for companies like Stimsonite and Avery Dennison to have to try to defend product liability claims under these circumstances. Here, the relevant assets have been the subject of no fewer than three subsequent transactions in the 12 years since the Pave-Mark deal. Avery Dennison no longer owns any of the historic Pave-mark assets. Neither Stimsonite nor Avery Dennison retains any substantial information regarding the production or design of the kettle at issue. In those instances where asset purchasers expressly assume tort liability going forward, those purchasers can institute the appropriate document retention and other policies that would allow them to defend against later-arising tort claims. Here, Stimsonite and Avery Dennison had no reason to believe that they would be dragged into court regarding a Pave-Mark product made in 1989. Defendants have spent considerable time and resources just locating the Asset Purchase Agreement and Mr. Ratchford, the only person Defendants have found with any firsthand knowledge regarding the asset purchase.

9

Dated: Staten Island, New York
November 20, 2007

                                                                                               */s/ John P. Connors, Jr.*
JOHN P. CONNORS, JR. (6514)
CONNORS & CONNORS, P.C.
766 Castleton Avenue
Staten Island, NY 10310
(718) 442-1700
Our File No.:DBS23483

JOHN M. ALTEN
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
(216) 583-7000

Attorneys for **Defendants**
**STIMSONITE CORPORATION and**
**AVERY DENNISON CORPORATION**

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS STIMSONITE CORPORATION AND AVERY DENNISON CORPORATION, LOCAL RULE 56.1 STATEMENT OF FACT NOT IN DISPUTE, MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS STIMSONITE CORPORATION AND AVERY DENNISON CORPORATION was mailed by first class mail, postage prepared this 20th day of November, 2007 and was served via the Court's ECF system to all counsel of record as indicated below.

JOHN P. CONNORS, JR. (6514)

TO: WINGATE, RUSSOTTI & SHAPIRO
Attorney for **Plaintiff**
420 Lexington Avenue
New York, NY 10170
Attn: William P. Hepner, Esq.
(212) 986-7353

Civ. 07 CIV 4639
UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

RICHARD DESCLAFANI,

                              Plaintiff,

-against-

PAVE-MARK CORPORATION, STIMSONITE
CORPORATION, STIMSONITE CORPORATION,
as successor in interest to PAVE-MARK CORPORATION,
AVERY DENNISON CORPORATION and AVERY
DENNISON CORPORATION, as successor in interest
to STIMSONITE CORPORATION,

                              Defendants.

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS STIMSONITE CORPORATION AND AVERY DENNISON CORPORATION, LOCAL RULE 56.1 STATEMENT OF FACT NOT IN DISPUTE, MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS STIMSONITE CORPORATION AND AVERY DENNISON CORPORATION**

**CONNORS & CONNORS, P.C.**
*Attorneys for* **DEFENDANTS,**
**STIMSONITE CORPORATION AND AVERY DENNISON CORPORATION**
*Office and Post Office Address, Telephone*
766 Castleton Avenue
Staten Island, New York 10310
(718) 442-1700 PHONE
(718) 442-1717 FAX

To

Signature (Rule ~~130-1.1-a~~ 11 )

*[signature]*

~~Print~~ name beneath
John P. Connors, Jr. (6514)

Attorney(s) for

Service of a copy of the within                            is hereby admitted,

Dated,

                                             Attorney(s) for

Please take notice
☐   NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on
☐   NOTICE OF SETTLEMENT
that an order               of which the within is a true copy will be presented for
settlement to the HON.                          one of the judges
of the within named court, at
on                          at
Dated,

                                             Yours, etc.
                               **CONNORS & CONNORS, P.C.**
                               *Attorneys for*
To                            *Office and Post Office Address*
                               766 CASTLETON AVENUE
Attorney(s) for                    STATEN ISLAND, NEW YORK 10310