UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RICHARD DESCLAFANI,

                            Plaintiff(s),

                                                      **07 CIV 4639 (SHS)(HP)**

        -against-

PAVE-MARK CORPORATION, STIMSONITE
CORPORATION, STIMSONITE CORPORATION,
as successor in interest to PAVE-MARK CORPORATION,
AVERY DENNISON CORPORATION, as
successor in interest to PAVE-MARK CORPORATION,

                            Defendant(s).
----------------------------------------------------------------X


### <u>AFFIRMATION IN OPPOSITION</u>

William P. Hepner (7131)
WINGATE, RUSSOTTI & SHAPIRO, LLP
Attorneys for Plaintiff Desclafani
420 Lexington Avenue
Suite 2750
New York, NY 10170
(212) 986-7353


Of Counsel:

William P. Hepner, Esq.  (WPH 7131)
Scott A. Stern, Esq.

# **TABLE OF CONTENTS**

PLAINTIFF'S RESPONSE TO AVERY'S SUMMARY AND STATEMENT OF
UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.        AVERY'S EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            1.        Exhibit 2: The Iberia Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            2.        The Letters Between Stimsonite and Pave-Mark . . . . . . . . . . . . . . . . . . . 2

            3.        The Ratchford Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            4.        The APA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.        PLAINTIFF'S EVIDENCE REGARDING MR. FINLEY . . . . . . . . . . . . . . . . . 3

    C.        AVERY'S ASSERTIONS REGARDING THE OWNERS
            OF PAVE-MARK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    D.        AVERY'S BAD FAITH UNDER RULE 56(G) . . . . . . . . . . . . . . . . . . . . . . . 4

    E.        PLAINTIFF'S STATEMENT PURSUANT TO 56(F) . . . . . . . . . . . . . . . . . . 6

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT I

    THE INITIAL BURDEN OF
    PROOF RESTS WITH AVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT II

    SUCCESSOR LIABILITY HAS BEEN
    ESTABLISHED IN THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.        THERE WAS A DE-FACTO MERGER OR CONSOLIDATION . . . . . . . . . . 11

            1.        Continuity of Ownership Exists Between
                 Pave-Mark and Stimsonite . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.        Pave-Mark Ceased To Exist After the Closing . . . . . . . . . . . . . . . . . . 17

       3.      Stimsonite Assumed Pavemark's Relevant Liabilities . . . . . . . . . . . . . 18

       4.      There Is Sufficient Continuity of Management, Personnel,
               Physical Location, Assets, and General Business Operation . . . . . . . . . 19

   B.     PLAINTIFF DOES NOT ALLEGE THAT THE "PRODUCT
        LINE" EXEMPTION IS APPLICABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

   C.     STIMSONITE MERELY CONTINUED PAVEMARK'S
        OPERATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

   D.     STIMSONITE'S IMPLICITLY ASSUMED PAVE-MARK'S
        TORT LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

POINT III

   AT THE VERY LEAST, PLAINTIFF IS ENTITLED TO
   CONDUCT DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RICHARD DESCLAFANI,

                         Plaintiff(s),

    -against-

PAVE-MARK CORPORATION, STIMSONITE
CORPORATION, STIMSONITE CORPORATION,
as successor in interest to PAVE-MARK CORPORATION,
AVERY DENNISON CORPORATION, as
successor in interest to PAVE-MARK CORPORATION,

                        Defendant(s).
-------------------------------------------------------------------X

**AFFIRMATION IN OPPOSITION**

**07 CIV 4639 (SHS)(HP)**

       Plaintiff Richard Desclafani, ("Descalfani") submits this memorandum of law in opposition to the Defendants' ("Avery") motion to dismiss the Plaintiff's complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PLAINTIFF'S RESPONSE TO AVERY'S
## SUMMARY AND STATEMENT OF UNDISPUTED FACTS

A.    <u>AVERY'S EVIDENCE</u>

       Avery submits as evidence the following: 1) Unsigned correspondences between Stimsonite and Pave-Mark, the relevance of which has not been established; 2) Records from Iberia that purportedly reflect the product at issue herein and the date of its manufacture; 3) an affidavit from Thomas C. Ratchford ("Ratchford"), a Vice President of Stimsonite at the time of the Agreement and 4) an unsigned copy of the Asset-Purchase Agreement. ("APA").

1.    Exhibit 2: The Iberia Records

There is no foundation for these records, which Avery claims demonstrate the date of manufacture, and they should not be considered. Without waiving this objection, plaintiff notes that these records do not state the date of manufacture, nor is it clear what this document proves.

2.    The Letters Between Stimsonite and Pave-Mark

Avery annexes several letters to its motion, none of which are signed or referred to by either defense counsel or Ratchford.  Though they appear to be irrelevant, Plaintiff objects to the introduction of these letters in reply for any reason.

3.    The Ratchford Affidavit

Ratchford set forth the following facts in his affidavit, *inter alia,* that:

a)    Pave-Mark was owned and controlled by "Mr. Marty Smith and his family";

b)    Smith family stated that they were interested in selling the business so that "Marty Smith could exit the business and retire.";

c)    That the transaction was not intended to be a "constructive merger" and Pave-Mark ownership received cash and not stock. (This is, of course, a legal conclusion and not a fact, and Ratchford is not competent to testify as to Pave-Mark's intention).

d)    "To [his] knowledge, the Smith family exited the business after the closing of the asset purchase."

e)    "Pave-Mark ownership received cash proceeds, not stock, in the transaction."

4.    The APA

Though Ratchford refers exclusively to the Smith family as the owners, the APA reflects that Pave-Mark was owned by three individuals: Martin Smith, Judith Smith, and Walter Finley. Yet, there is no evidence in the APA or the record that Mr. Finley is related to Martin and Judith

2

Smith. In fact, other than being listed in the APA, Avery's motion is entirely silent as to Mr.

Finley. To be sure, there is no evidence contained therein suggesting that Ratchford knew who

Finely was.

B.    PLAINTIFF'S EVIDENCE REGARDING MR. FINLEY

The failure of Avery's attorney and Mr. Ratchford to specifically identify Mr. Finley or

discuss his relevance herein was notable because:

1) A review of the available 10-Ks and other filings on file with the Security and Exchange Commission[1] revealed that Finley became a Vice President of Stimsonite immediately upon the closing. (See Exhibit "A", page 10); in fact, he was one of only six corporate officers other than the CEO, and was one of the four highest paid persons in this publically traded corporation.   (See Exhibit "A", page 10). Thus, Mr. Finley did not exit the business and retire.

2) Finley did, in fact, receive a substantial amount of stock options as compensation. (See Exhibit "A", pages 10, 12 and ).

3) Finley received a bonus from Stimsonite pursuant to a bonus plan Pave-Mark had in effect for its employees, and which Stimsonite assumed as part of the transaction. (See Exhibit "A", page 11, n 10).

4) Ratchford, who stated he was personally and intimately involved in the negotiations with Pave-Mark, also had personal knowledge of the above 3 facts regarding Finley because he was 1 of the other 6 Executive Officers listed in Stimsonites 10-K and was an officer when Finley was inducted into this select group. **Indeed, Ratchford is the officer who signed Exhibit "A"** (See Exhibit "A", pages 3 and 18 ).

C.    AVERY'S ASSERTIONS REGARDING THE OWNERS OF PAVEMARK

Avery made numerous factual statements regarding the owners, all of which avoid any

reference to Finley.

---

[1]    This Court may take judicial Notice of the fact that Mr. Finley is listed in the 10-K as Vice President. See, e.g. Loveman v. Lauder, 484 F.Supp.2d 259, 267 n48 (S.D.N.Y.,2007).

3

1)    "Pave-Mark's controlling family exited the business and retired with their profits." (Page 8);

2)    The transaction "was designed, on the Pave-Mark side, to allow Pave-Mark ownership to cash out of the business." (Page 8);

3)    "Pavemark's majority ownership exited the business" after the purchase. (Page 1)

4)    "The APA did not give Pave-Mark stockholders any ownership interest in Stimsonite going forward." (Page 3);

5)    Pavemark's stockholders received cash exceeding $600,000 in consideration cash under the Agreement." (Page 3);[2]

6)    "No Stock was given as consideration." (Page 8).

Despite the above statements, we now know that Mr. Finley did not cash out, retire or exit the business. Finley became a highly paid corporate officer, continuing the Pave-Mark Operations out of Atlanta, and received stock and a bonus pursuant to Pave-Mark's bonus plan, which was assumed by Stimsonite. We also know that, although "the APA" may not have given Finley any ownership interest going forward, he did received one. Indeed, "the APA" did not provide that Finley would become a corporate officer and one of the four highest paid persons in this publically traded company, but he most certainly did.


D.    AVERY'S BAD FAITH UNDER RULE 56(g)

The inexorable conclusion to be drawn is that Avery crafted these statements to intentionally mislead the reader to believe that Ratchford and Avery intended that Finley was encompassed in all of its statements, or that Ratchford was unaware of Finley's existence. The latter explanation would be incredible as a matter of law.

---

[2]Notably, this fact is also belied by Stimsonite' filings with the SEC. (See Exhibit "B", page 17, #15 (top)  wherein Stimsonite reports that it paid $7,500,000 for Pave-Mark.)

4

This omission of fact was unequivocally material.  As plaintiff will set forth post in Point II(A)(1), the penultimate issue before this Court is whether a defacto merger occurred between Stimsonite and Pave-Mark. Indeed, according to Avery, plaintiff cannot prove that a defacto merger occurred because he must demonstrate a "continuity of ownership" when Stimsonite purchased Pave-Mark, and this he cannot do. Since it is manifest that Mr. and Mrs. Smith retired, the only way plaintiff could prove his case was through Mr. Finley, who had become a highly paid corporate officer of Stimsonite and continued to run Pave-Mark's business out of Atlanta. Thus, Avery certainly had a motive to try and shield this fact from plaintiff and the Court.

Indeed, Avery not only failed to mention Finley in its motion, but it inexplicably ignored its requisite burden on proof on a motion for summary judgment. Since learned counsel is undoubtedly aware that Avery bore the burden of proof on a motion at this time, especially when discovery had not commenced, this would explain why Avery could not affirmatively argue that there was no continuity of ownership based on these facts. So, instead, Avery drafted statements that were designed to be accurate only under the most hyper-technical definition of the word and hoped that, by their presence alone, the reader would conclude that none of the owners - Finley included - had no further interest in Pave-Mark or Stimsonite. To be sure, Avery cleverly turned the "continuity of ownership" argument into a discussion of the "product line" exception, a doctrine which has no bearing on the issue, but regarding which it could meet its burden. (See Avery Memorandum, pages 6-8).

Making matters worse, Avery represented to plaintiff its motion would remove any doubt that Avery purchased Pave-Mark's entire business, and that successor liability could not possibly lie.  Then, when Avery consented to our adjournment of this motion, it would do so only if we agreed to stay discovery. Though we reserved our right to conduct discovery regarding issues

5

germane to this motion, by the time we realized the facts surrounding Finley, it was too late. Then, when plaintiff began to uncover the facts, including, but not limited to, those regarding Finley and questioned defense counsel, he became indignant and accused <u>plaintiff</u> of acting in bad faith. In an e-mail responsive to our good faith questions after reviewing Avery's submissions, which did not contain the evidence Avery had promised when we agreed to stay discovery, counsel wrote:

> I realize you are in the position of having to jettison a case for nothing and that at this point you're in the <u>throw-everything-at-the-wall-and-hope-anything-sticks phase</u>. Given the cordial and frank discussions I have had with Bill and the wisdom and efficiency demonstrated to date, I was hopeful we could avoid that. My fear is that now that our motion is ripe, that may be changing. I hope not. (See Exhibit "C")(emphasis supplied).

E.      PLAINTIFF'S STATEMENT PURSUANT TO 56(F)

To the extent that this Court believes that Avery met its requisite burden, and plaintiff has not demonstrated sufficient evidence, plaintiff requests additional time to conduct discovery on the related issues. The facts and documents plaintiff has identified as relevant will be set forth <u>post</u> in Legal Argument Point IV.

### PRELIMINARY STATEMENT

The general legal principles are not in dispute. The parties agree that the exceptions to the general principal that a corporation that purchases the assets of another corporation is not liable for the seller's liabilities under New York  are: (1) the purchasing company expressly or impliedly assumed the predecessor's tort liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape such obligations. Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 245 (1983).

Regarding the second exception, the parties further a plaintiff must prove: (1) continuity of ownership; (2) cessation of ordinary business operations and the dissolution of the selling corporation as soon as possible after the transaction; (3) the buyer's assumption of the liabilities ordinarily necessary for the uninterrupted continuation of the seller's business; and (4) continuity of management, personnel, physical location, assets, and general business operation. See Sweatland v. Park Corp.181 A.D.2d 243, 587 N.Y.S.2d 54 (4th Dept. 1992). It is also not disputed that the plaintiff must prove all of the above, but he must prove at least the first two.

Next, the parties also agree that, ultimately, the burden rests with plaintiff to prove the that one of the above exceptions apply. The parties disagree, however, regarding whether Avery carries the initial burden on a motion for summary judgment of proving that none of the above exceptions apply to the facts of this case.

Further, the parties agree that the "product line" theory of successor liability is inapplicable under New York law. Plaintiff, however, takes exception to Avery's attempt to interject the "product line" theory into its discussion regarding "de facto merger." These

7

exceptions are mutually exclusive and any continued attempt by Avery to argue that New York's rejection of the product line exception defeats plaintiff's claim of a de-facto merger is a "red-herring."[3]

Further, despite being unable to conduct discovery, plaintiff has been able to uncover enough evidence to not only demonstrate the existence of a question of fact regarding this issue, but to warrant summary judgment on this issue in his favor. Notably, as plaintiff will demonstrate Avery wrongfully withheld evidence from this Court, and the Court should find that this constituted an intentional misrepresentation of material fact.

The Court is, therefore, presented with 5 straightforward questions:

1) Does plaintiff carry the initial burden of proof on the issue of successor liability on a motion for summary judgment?

2) If the burden rests with Avery its motion for summary judgment, has it satisfied this burden.?

3) Is this one of the exceptional cases in which summary judgment can be granted without affording plaintiff an opportunity to conduct discovery?

4) Did the Second Circuit abolish the well established "de facto merger" exception when it rejected the unavailability of the "Product Line" exception in New York?

5) Based on the arguments and evidence plaintiff has presented establishing that successor liability lies in this action, can defendants demonstrate that an issue of fact exists in this regard, precluding partial summary judgment to plaintiff?

Plaintiff respectfully submits that the answer to all of these questions is no.

---

[3]

See,e.g. Avery's Memorandum, page 8 in which Avery states that the Second Circuit "*specifically rejected* adoption of the "product line" theory of successor liability * * * Thus, the Second Circuit held that absent evidence of continuity of ownership, there can be no de facto merger and thus no successor liability contrary to an asset-purchase agreement's express terms.").

Finally, the Court must determine what the consequences will be to Avery for its failure to notify the Court of Finley's identify and his relevance to this action when it asked this Court to dismiss plaintiff's complaint.

## ARGUMENT

## POINT I

## THE INITIAL BURDEN OF
## PROOF RESTS WITH AVERY

Avery correctly argues that under New York law, the ultimate burden of proving successor liability rests with the plaintiff.  This, however, does not mean that plaintiff has the initial burden on a summary judgment motion, and Avery has either  misunderstood or chosen to ignore this axiomatic standard.

The district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial, and that summary judgment is appropriate as a matter of law. Amaker v. Foley, 274 F.3d 677, 681 (2d Cir.2001). Though movant can discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case (see Celotex v. Catrett, 477 U.S. 317, 325 (1986), a movant cannot merely identify the legal issues presented and hope that non-movant will be unable to present sufficient evidence to raise a question of fact;  the court must be satisfied that the citation to evidence in the record supports the assertion. Vt. Teddy Bear v 1-800 Beargram Co., 373 F.2d 241, 244 (2nd Cir. 2004).  Defendant's evidence must be admissible, and the rules of evidence do apply equally on a motion for summary judgment. Raskin v. Wyatt Co., 125 F.3d 55, 66 (2nd Cir. 1997). If the Courts did not require movant to affirmatively verify in the record the factual assertions in the motion for summary judgment, this

9

"would derogate the truth-finding functions of the judicial process by substituting convenience for facts." Giannullo v. City of N.Y., 322 F.3d 139, 143 n. 5 (2d Cir.2003).

This is especially so where plaintiff has not been afforded the opportunity to conduct discovery. Indeed, summary judgment may be granted against a party who has not had the opportunity to conduct discovery "[o]nly in the rarest of cases." Citibank, N.A. v. Osorno, 2006 WL 2602156 (S.D.N.Y. 2006) quoting Hellstrom v. U.S. Dept. of Veterans Affairs, 201 F.3d 94, 97 (2d. Cir.2000).Where the legal issue concerns successor liability, such an exceptional case is not presented. See Wensing by Wensing v. Paris Industries--New York 158 A.D.2d 164, 558 N.Y.S.2d 692 (3rd Dept. 1990); Ladenburg Thalmann & Co., Inc. v. Tim's Amusements, Inc., 275 A.D.2d 243, 712 N.Y.S.2d 526 (1st Dept. 2000). Sweatland v. Park Corp., 181 A.D.2d 243, 587 N.Y.S.2d 54 (4th Dept. 1992)

As will be discussed in greater detail, *infra,* Avery not only failed to carry its requisite burden of proving the non-existence of a question of fact, but has presented evidence warranting a finding as a matter of law that successor liability applies to Avery. To be sure, Avery's failure does not only implicate its burden, but calls into question whether Avery has made material misrepresentations regarding those very facts, both by omission and commission.[4]

---

[4]

The documentary evidence submitted by Avery was inadmissible, and Mr. Ratchford's affidavit violated numerous evidentiary principles, including, but not limited to, the Best Evidence Rule. But plaintiff need not brief this issue because, assuming all of this evidence was admissible and competent, they ultimately destroy Avery's argument.

## POINT II

## SUCCESSOR LIABILITY HAS BEEN
## ESTABLISHED IN THIS ACTION

The exceptions to the general principal that a corporation that purchases the assets of another corporation is not liable for the seller's liabilities under New York are: (1) the purchasing company expressly or impliedly assumed the predecessor's tort liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape such obligations. Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 245 (1983).

A.    THERE WAS A DE FACTO MERGER OR CONSOLIDATION

Plaintiff addresses this exception first since it is the only issue Avery discusses in any detail in its moving papers.

Initially, the description of the transaction by Avery and Pave-Mark as merely an Asset Purchase Agreement is of no moment. See Santa Maria v. Owens-Illinois, Inc., 808 F.2d 848, 860 (1st Cir.1986) (interpreting New York law); Lumbard v. Maglia, Inc., 621 F.Supp. 1529, 1535 (S.D.N.Y.1985); Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 F.Supp. 834, 838 (S.D.N.Y.1977). This exception contemplates "de facto" mergers and consolidations, which occur where one corporation is absorbed by another, but without compliance with the statutory requirements for a merger. Id.

Regardless of what the parties call it, a transaction structured as a purchase-of-assets may be deemed a de facto merger if the following factors are present: (1) continuity of ownership; (2) cessation of ordinary business operations and the dissolution of the selling corporation as soon as possible after the transaction; (3) the buyer's assumption of the liabilities ordinarily necessary for

the uninterrupted continuation of the seller's business; and (4) continuity of management, personnel, physical location, assets, and general business operation. See <u>Sweatland v. Park Corp.,</u>181 A.D.2d 243, 587 N.Y.S.2d 54 (4th Dept. 1992). It is not necessary that all four of these factors are present. See <u>Fitzgerald v. Fahnestock & Co.</u>, 286 A.D.2d 573, 574, 730 N.Y.S.2d 70 (2001). Plaintiff is, however, required to demonstrate continuity of ownership and cessation of ordinary business operations and dissolution of the selling corporation as soon as possible after the transaction. <u>State of New York v. National Serv. Indus.</u>, 460 F.3d 201 (2d Cir. 2006); <u>In Re New York City Asbestos Litig</u>, 798 N.Y.S.2d 484 (1st Dept. 2005). Other than that, the question of whether there has been a de facto merger is fact specific and each case must be resolved on a "'case-by-case basis,' analyzing 'the weight and impact of a multitude of factors that relate to the corporate creation, succession, dissolution, and successorship.'" <u>Beck v. Roper Whitney, Inc.</u>, 190 F.Supp.2d 524 (W.D.N.Y.,2001) *citing* <u>Sweatland v. Park Corp.</u>, 181 A.D.2d 243, 587 N.Y.S.2d 54, 56 (4th Dept.1992). Indeed, public policy considerations dictate, at least in the context of tort liability, that courts have flexibility in determining whether a transaction constitutes a de facto merger. <u>Sweatland v. Park Corp.</u>, 181 A.D.2d 243, 246, 587 N.Y.S.2d 54 (4th Dept. 1992).

    1.    <u>Continuity of Ownership Exists Between Pave-Mark and Stimsonite</u>

Avery's argument relies solely on the legal findings in <u>State of New York v. National Serv. Indus.</u>, 460 F.3d 201 (2d Cir. 2006). Specifically, Avery argues that "[a]ll of the analysis contained in <u>National Serv. Indus.</u> applies foursquare here."[5] Yet, despite its reliance on the

---

[5]     Avery also attempted to intertwine the issue of the "product line" exception with the de facto merger exception. As will be set forth <u>post</u> in Point III, this is a red herring and the two exceptions are wholly independent of each other.

Court's analysis in <u>National Serv. Indus</u>.", Avery curiously stated that the Court's analysis need not be repeated here. We disagree.

The Second Circuit's decision in <u>National Serv. Indus</u> was predicated on the fact that the parties agreed that none of the four part test regarding de facto merger were met. Plaintiff did not dispute on appeal that there was no evidence of continuity of ownership and defendants had previously conceded that the last three requisites to the test applied. <u>National Serv. Ind.</u> at 209-210. The issue before the Second Circuit, therefore, was <u>not</u> whether plaintiff had satisfied the continuity of interest test, but rather, whether plaintiff could prove a de facto merger <u>without</u> satisfying the test. Additionally, the Second Department analyzed New York law to determine whether the product line exception had yet been accepted or rejected in this State.

Here, plaintiff concedes successor liability may not lie without continuity of interest and agrees that the "product line" exception has been rejected by the Court of Appeals in New York. Thus, Avery's reliance on <u>National Serv. Indus</u> is misplaced.

<u>National Serv. Indus</u>, is nevertheless instructive because the Court noted that plaintiff had not proved continuity of ownership between purchaser and seller because there was no evidence that the previous owners of seller continued to profit from the company in any way. See also <u>Colon v. Multi-Pak Corp</u>., 477 F.Supp.2d 620 (S.D.N.Y. 2007), (the Court noted that plaintiff was unable to produce any evidence demonstrating an identity of directors or shareholders). <u>Buja v. KCI Konecranes Intern. Plc.</u>, 12 Misc.3d 859, 815 N.Y.S.2d 412 (N.Y.Sup. 2006) (no evidence that any shareholders of the seller became direct or indirect shareholders of purchaser).

The question therefore becomes: Did any of the Pave-Mark Stockholders - Martin Smith, Judith Smith, or Walter Finley - profit from the business after it as acquired by Stimsonite or become direct or indirect shareholders.   Making matters easier for the Court, plaintiff will

13

concede for the purpose of this discussion that neither Mr. or Mrs. Smith continued to profit from Pave-Mark's business vis a vis Stimsonite or became direct or indirect shareholders of Stimsonite. Instead, plaintiff will focus on Mr. Finley.

Although Finley's name appears in the APA as one of Pave-Mark's three Stockholders, Avery's does not refer to him once in its motion. Instead,, it described the Smith's by name, it implies if not directly states, that the Stockholders are only the "Smith family", and where to do otherwise would be an outright fabrications, qualifies its description of the Stockholders by talking about the "controlling" or "majority" ownership. Indeed, if plaintiff had not surreptitiously stumbled across Mr. Finley's name buried in the APA and again in documents filed by a defunct corporation with the Security and Exchange Commission over a decade ago, we never would have known of his existence. As will be discussed, *supra,* plaintiff suspected that Avery had not been forthright in its assertions to this Court, he underwent a search to quell his suspicions that Avery might have omitted facts regarding the "Smith Family." When plaintiff read that the Smith family agreed to a five year non-compete clause (See A.P.A. 7.7(a)), he observed that a Mr. Finley was not restricted by the clause. Then, upon searching through public records to find more information, Mr. Finley's name was revealed in Stimsonite's filings with the Security and Exchange Commission.[6]  (See Exhibits "A" and "B"). These documents revealed the following about Mr. Finley:

1)     Upon the closing of the transaction, Finley immediately became an Executive Officer of Stimsonite.

---

[6]

    This Court may take judicial Notice of the fact that Mr. Finley is listed in the 10-K as Vice President. See, e.g. <u>Loveman v. Lauder</u>, 484 F.Supp.2d 259, 267 n48 (S.D.N.Y. 2007).

2)    Finley was one of six Vice Presidents, and was  one of the four most highly compensated officers of Stimsonite for the 1996 fiscal year.[7]

3)    Finley received a bonus from Stimsonite pursuant to a bonus plan Pave-Mark had in effect for its employees, and which Stimsonite assumed as part of the transaction.

4)    Finley was granted a substantial amount of stock options

Having read the above, plaintiff reexamined Avery's motion papers to see if his suspicion was correct that Avery had misrepresented, by commission or omission, facts regarding Finley as they concerned this issue.  The record is replete with statements that evince Avery's intent to deceive, including, but not limited to, the following:[8]

a)    Defense counsel wrote: "Pave-Mark's controlling family exited the business and retired with their profits" and the transaction "was designed, on the Pave-Mark side, to allow Pave-Mark ownership to cash out of the business."[9] (8);

b)    "The Smith family stated an interest in selling the assets of Pave-Mark in exchange for cash so Marty Smith could exit the business and retire."  (Ratchford Off, par. 6).

c)    "Pave-Mark's majority ownership exited the business" after the purchase. (1)

d)    "Pave-Mark was a privately owned company and controlled by Marty Smith and his family." (Ratchford Off, par. 6).

---

[7]    Notably, one of the other 5 was Ratchford, who also signed the related documents. (See Exhibit "A").

[8]    Page number in parenthesis refer to the page number in Avery's memorandum to the extent otherwise indicated.

[9]    But see <u>Beck v. Roper Whitney, Inc.</u>, 190 F.Supp.2d 524 (W.D.N.Y. 2001)."Under New York law, when analyzing whether a de facto merger has taken place, a court should disregard mere questions of form and ask whether, in substance, <u>it was the intent of the successor </u>to absorb and continue the operation of the predecessor." This, Avery is not only incompetent to state what Pave-Mark's intention was, but it is irrelevant.

e)      "To my knowledge, the Smith family exited the business after the closing."(Ratchford Off, par. 6).

f)      "The APA did not give Pave-Mark stockholders any ownership interest in Stimsonite going forward." (3);

g)      "Pave-Mark's stockholders received $600,000 cash under the Agreement." (3);

h)      "No Stock was given as consideration." (8).

The above statements, spread separately across the record, each seemed to be qualified with precision that there was unmistakable intent behind each word; the sole exception being "no stock was given", which was especially vague.  Then, when the statements were lined up, as they are above, it began to crystalize: Each declaration had one thing in common: great efforts were taken to avoid any reference to William Finley.

Plaintiff respectfully submits that Avery's failure to acknowledge Finley, let alone submit an affidavit from him or discuss who he was, constitutes a material misrepresentation of fact, both omission and commission. Indeed, the evidence presented regarding Mr. Finely leads to the inexorable conclusion that Avery's learned counsel's statements were the product of careful and deliberate forethought, and they were designed to be accurate only under the most hyper-technical definition of the word. Certainly,  Avery's learned and experienced counsel knew that the only way plaintiff could defeat this motion would  be if it we by some miracle put together the pieces of this puzzle.

Nevertheless we did, and proved that Finley had a significant financial interest in Pave-Mark's business going forward for Stimsonite. Indeed, he continued running the operations out of Atlanta. Though not part of the APA, he received stock options and, moreover, received a bonus based on a pre-existing bonus plan under that Stimsonite assumed from Pave-Mark.  See Kidz

16

<u>Cloz, Inc. v. Officially for Kids, Inc.</u>, 2002 WL 1586877 *2 (S.D.N.Y. 2002) (one of the principal sharelholders of predecessor became Vice President of Production at the successor corporation); <u>Colon v. Multi-Pak Corp.</u>, 477 F.Supp.2d 620 (S.D.N.Y. 2007), (the Court noted that plaintiff was unable to produce any evidence demonstrating an identity of directors or shareholders). <u>Buja v. KCI Konecranes Intern. Plc.</u>, 12 Misc.3d 859, 815 N.Y.S.2d 412 (N.Y.Sup. 2006) (no evidence that any shareholders of the seller became direct or indirect shareholders of purchaser); <u>In Re New York City Asbestos Litig</u>, 798 N.Y.S.2d 484, 487 (1st Dept. 2005) (no continuity of ownership between buyer and seller because "New H-T paid for Old H-T's assets with cash, not with its own stock, <u>and neither Old H-T nor any of its shareholders has become a shareholder of New H-T</u>.")

2.    <u>Pave-Mark Ceased To Exist After the Closing</u>

Unlike the "mere continuation" exception, which is a separate and distinct exception to the general rule, *infra,* this fact does not require that the predecessor company be completely dissolved. Rather, the company must not exist "in a meaningful way [after] the subject transaction closed * * * it is sufficient that it be 'shorn of its assets and has become, in essence, a shell' <u>Fitzgerald v. Fahnestock & Co., Inc.</u>, 286 A.D.2d 573, 575, 730 N.Y.S.2d 70 (1st Dept.2001).

Here, the APA states that Stimsonite purchased Pave-Mark as a "going concern" and admits that Pave-Mark ceased operating after the deal was closed. To be sure, in its Notice of Removal, Avery stated that "Pave-Mark Corporation no longer exists."

Thus, this requirement is met, and where the first two requirements are met, this Court is not required to look further.  It is not necessary that all four of these factors are present. See

17

Fitzgerald v. Fahnestock & Co., 286 A.D.2d 573, 574, 730 N.Y.S.2d 70 (2001). Plaintiff must only demonstrate continuity of ownership and cessation of ordinary business operations and dissolution of the selling corporation as soon as possible after the transaction. State of New York v. National Serv. Indus., 460 F.3d 201 (2d Cir. 2006); In Re New York City Asbestos Litig, 798 N.Y.S.2d 484 (1st Dept. 2005).

      3.     Stimsonite Assumed Pave-Mark's Relevant Liabilities

      The third factor in "de facto merger analysis," is that the successor assumes the liabilities of seller that were necessary for the uninterrupted continuation of the business, is obviously met.

      The inquiry here is not whether the successor corporation assumed the liabilities of the predecessor in tort, but those necessary to permit the successor to continue the ordinary business of the predecessor without interruption. See Diaz v. South Bend Lathe Inc. 707 F.Supp. 97 (S.D.N.Y.1989). In Diaz, purchaser assumed the seller's existing manufacturing and sales representative contracts. It also agreed to hire the seller's employees. The assumption of these liabilities and obligations made it clear that the seller purchased an ongoing business with a sales force, a source of business (ie: the existing manufacturing contracts) and a work force to satisfy those contracts.

      Here, Stimsonite purchased Pave-Mark as a "going concern", and it took over the contracts, and even kept in force a bonus plan was in effect for Pave-Mark employees. To be sure, when the transaction closed, the results of Pave-Mark's operations immediately became part of Stimsonite's consolidated balance sheet and other financial statements. (See Exhibit "B").

      Avery might argue that it did not expressly assume certain warranty obligations or other liability for Pave-Mark's products. The argument would overlook, however, "that the ordinary

business operations of a manufacturer do not depend on whether it offers warranties. Rather, operations depend on manufacturing contracts and the ability to satisfy those contracts." Id.

> 4.     There Is Sufficient Continuity of Management, Personnel, Physical Location, Assets, and General Business Operation

For the same reasons as set forth, *supra,* in Points A, B, and C, this requirement has been met.

Additionally, plaintiff notes that, although the APA states this was a purchase of "substantially all"of Pave-Mark's assets, in reality, all of Pave-Mark's Assets were purchased by Stimsonite. Indeed, according to Avery, Mr. and Mrs. Smith cashed retired and, as we now know, Mr. Finley came over to Stimsonite when the transaction closed. There were no assets retained by Pave-Mark.[10]

Although the Agreement did not exclude <u>any</u> of the assets of Pave-Mark, intangible or tangible, the assets described in the APA are worth listing:

    a)     All Balance Sheet Assets;

    b)     All Rights title and interest and benefits to or under Lease Agreements;

    c)     Prepaid interest and deposits;

    d)     All inventory, including, *inter alia,* raw materials and work-in-progress, as well as items such as labels and packaging materials;

    e)     Accounts Receivable;

---

[10]     The Retained Assets under 1.2 include: 1) "certain contracts", 2) "cash and cash equivalents" and "Other Retained Assets". The First and Third were to be described in Schedules annexed to the Agreement; there were none. As far as cash, this is not an "asset," and any argument by Avery that it exchanged 6,000,000 of its <u>dollars</u> in consideration for the cash left in Pave-Mark's bank would be absurd.

f)      All Tangible Personal Assets;

g)      Books Records and Other Written Materials;

h)      Catalogs and Advertising Materials;

I)      List of All Customers that Pave-Mark had distributed or sold products, including information regarding dollar volumes of sales for the prior four years;

j)      Rights Under Confidentiality Agreements;

k)      Intellectual Property Rights;

l)      Contracts;

m)     Permits and Approvals;

n)      Goodwill and Trade Names;

o)      Claims against Third Parties;

p)      Insurance Policies and Claims.


B.    PLAINTIFF DOES NOT ALLEGE THAT THE "PRODUCT LINE" EXCEPTION IS APPLICABLE

Avery's discussion of the "product line theory" is a blatant "red herring", and the topic has no place in this discussion. Contrary to Avery's argument, the "product line theory" is a separate and distinct exception, over and above the four discussed herein. Plaintiff does not deny that this exception, adopted by some states because they believe those four exceptions are too narrow, has been rejected in New York. See Semenetz v. Sherling & Walden, Inc., 7 N.Y.3d 194, 201 (2006); Ray v. Alad Corp., 19 Cal.3d 22, 560 P.2d 3 (1977)

To invoke the "product line exception", the proponent would have to demonstrate that: (1) the injured party's remedy against the original manufacturer was virtually destroyed by

20

the successor's acquisition of substantially all the predecessor's assets, (2) the successor continued to manufacture essentially the same line of products as its predecessor, (3) the successor had the ability to assume the original manufacturer's risk-spreading role, and (4) the successor benefitted from the original manufacturer's good will. See Ray at 31. These factors are separate and distinct four factors enunciated in Schumacher, *supra*.

The Court of Appeals in New York examined this issue for the first time in Simonize v. Sherling & Walden, Inc., 7 N.Y.3d 194, 201 (2006). The Senenetz Court rejected the "product line" exception and, as such, held that for plaintiff to establish successor liability, he would have to prove that the facts of that case "fit within any of the four Schumacher exceptions." The Simonize Court did not hold that its rejection of the "product line" exception abrogated or altered the traditional factors established under Schumacher and its progeny.

Not surprisingly, Avery failed to list these four factors in its motion, which would have clearly demonstrated the contrast between those four factors and those listed under Schumacher vis a vis de facto merger.    Instead, Avery interjected the "product line" exception topic its discussion of the defacto merger exception as if they were one and the same, arguing by implication that the "product line" exception and the "continuity of ownership" exception were synonymous.

Clearly, it was not plaintiff who was "throwing everything against the wall in hopes something would stick."


C.    STIMSONITE MERELY CONTINUED PAVE-MARK'S OPERATIONS


21

The next separate and distinct exception is where "the purchasing corporation [is] a mere continuation of the selling corporation" Schumacher v. Richards Shear Co., Inc., 59 N.Y.2d at 245.)

The "mere continuation" exception to the traditional rule applies where "it is not simply the business of the original corporation which continues, but the corporate entity itself." Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 F.Supp. 834, 839 (S.D.N.Y.1977). "A continuation envisions a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer." Id.; see also Schumacher, 59 N.Y.2d at 245 ("The ['mere continuation'] exception refers to corporate reorganization ... where only one corporation survives the transaction; the predecessor corporation must be extinguished.").

Here, it is not in dispute that there is only one corporation, and that Pave-Mark did not survive on its own. Avery has admitted as such. Indeed, this is not a case in which Pave-Mark

- survived "as a distinct, albeit meager, entity." Schumacher v. Richards Shear Co., Inc., 59 N.Y.2d 239 (1983);

-- survived the transfer as a distinct corporation, albeit in bankruptcy. Goldman v. Packaging Industries, Inc., 144 A.D.2d at 535.)

- continued to exist for nearly two years until its dissolution. Diaz v. South Bend Lathe Inc., 707 F.Supp. 97 (S.D.N.Y.,1989).

- has been involved in litigation and has a default judgment filed against it by Plaintiff, Buja; and is represented in ongoing litigation. Buja v. KCI Konecranes Intern. Plc., 12 Misc.3d 859, 815 N.Y.S.2d 412 (N.Y.Sup.,2006).

- The was required by the seller to "retain its corporate existence and remain in good standing for over five years after the date of the sale and 2) buyer continued to make payments to seller for the purchased assets for over five years after the date of the sale. Morales, supra.

22

D.    STIMSONITE IMPLICITLY ASSUMED OF PAVE-MARK'S TORT LIABILITY

Avery stresses in its motion – as indeed it must – that Stimsonite did not expressly assume Pave-Mark's tort liability, and these were retained by Pave-Mark. Though it is true that Pave-Mark retained expressly retained such liability under the APA, this is legal fiction. Indeed, Stimsonite bought Pave-Mark as a going concern and, as Avery admits, Pave-Mark ceased to exist upon the closing. This begs the question how a corporation that immediately ceases to exist in its entirety upon closing can retain anything.

Also, this exception also requires an analysis of whether Stimsonite implicitly assumed Pave-Mark's tort liabilities. To the extent that Stimsonite acquired Pave-Marks rights under insurance contracts, required that payments be kept current under those contracts, and also required that Pave-Mark make representations regarding warranties (See APA pp. 27-29), one wonders why Avery would care about such things if no torts liability could be imputed to Stimsonite.   Thus, a question of fact exists regarding whether Stimsonite implicitly assumed Pave-Mark's tort liability. Regarding this issue, discovery is required.

Finally, even if plaintiff cannot prove this exception, it is separate and distinct from the "de facto merger" and "mere continuation" exceptions.


# POINT III

## AT THE VERY LEAST, PLAINTIFF IS ENTITLED TO CONDUCT DISCOVERY

Summary judgment may be granted against a party who has not had the opportunity to conduct discovery "[o]nly in the rarest of cases." Citibank, N.A. v. Osorno, 2006 WL 2602156 (S.D.N.Y. 2006) quoting Hellstrom v. U.S. Dept. of Veterans Affairs, 201 F.3d 94, 97 (2d. Cir.2000).

This principal has repeatedly been held to apply when defendant moves on the basis of successor liability. See Wensing by Wensing v. Paris Industries--New York 158 A.D.2d 164, 558 N.Y.S.2d 692 (3rd Dept. 1990); Ladenburg Thalmann & Co., Inc. v. Tim's Amusements, Inc., 275 A.D.2d 243, 712 N.Y.S.2d 526 (1st Dept. 2000). Sweatland v. Park Corp., 181 A.D.2d 243, 587 N.Y.S.2d 54 (4th Dept. 1992)

Here, based on the traditional factors set forth by the Courts, *supra,* plaintiff should be able to conduct discovery regarding the following facts and documents:

1) The APA is replete with clauses referring to external schedules and exhibits. None of them have been annexed to this motion or forwarded to plaintiff; (ie: Confidentiality Agreements, Retained Assets, Bonus Plans; etc.)

2) Avery concludes that Stimsonite could not have transferred to Avery what Stimsonite Pave-Mark did not obtain from Pave-Mark. This statement not only presumes the very legal question that is at issue here, but the corollary must also be true. That is, if Stimsonite did expressly transfer an asset or liability of Pave-Mark's to Avery, then it must have obtained it from Pave-Mark in the first place. Thus, all documents regarding Avery's purchase of Stimsonite is probative to this issue, and is infinitely more competent then Ratchford's assumption of what the parties intended;

3) Similarly, Avery mentions that it subsequently transferred the Pave-Mark assets "yet another company." Surely Avery knows who this company is, and again, since Avery could not transfer to this Company what it did not own, plaintiff should be able to discover what it claimed to own when it sold Pave-Mark's assets;

4) Next, our informal investigation reveals that Avery continued to use Pave-Mark's name up to and including the date of the accident. Since plaintiff has been unable to discover whether or not this is true, we should be able to do so;

5)    Finally, the APA annexed to the motion is, inexplicably, not the same document as the one Avery exchanged with plaintiff when it asked plaintiff to voluntarily discontinue this action. It is also unsigned, as are all the documents annexed to the motion. Though plaintiff has not observed any substantive differences in the documents, he should be able to explore this issue.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that Avery's motion for summary judgement be denied in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      January 9, 2008

Yours, etc.,

_____
William P. Hepner (WPH7131)
WINGATE, RUSSOTTI & SHAPIRO, LLP
Attorneys for Plaintiff(s)Richard DeSclafani
420 Lexington Avenue
Suite 2750
New York, NY 10170
(212) 986-7353

TO:    John M. Altman, Esq.
      Ulmer & Burne, LLP
      Skylight Office Tower
      1660 West 2nd Street, Suite 1100
      Cleveland, OH 44113

      John P. Connors, Jr., Esq.
      Connors & Connors, P.C.
      Attorney For: Stimsonite
      Corporation
      766 Castleton Avenue
      Staten Island, N.Y.  10310

Civ. 4639/07
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD DESCLAFANI,

Plaintiff(s),

- against -

PAVE-MARK CORPORATION., STIMSONITE
CORPORATION, STIMSONITE CORPORATION,
as successor in interest to PAVE-MARK CORPORATION,
AVERY DENNISON CORPORATION, and AVERY
DENNISON CORPORATION, as successor in interest to
STIMSONITE CORPORATION,

Defendant(s).

## AFFIRMATION IN OPPOSITION

## WINGATE, RUSSOTTI & SHAPIRO, LLP
Attorneys for Plaintiff(s)
**420 Lexington Avenue**
**Suite 2750**
**New York, New York 10170**
**(212) 986-7353**
*Facsimile* **(212) 953-4308**