C

scott stern
_____

**From:** Alten, John [jalten@ulmer.com]
**Sent:** Tuesday, January 08, 2008 9:38 PM
**To:** scott stern
**Cc:** William Hepner
**Subject:** RE: Disclafani

Scott and Bill-

I realize you are in the position of having to jettison a case for nothing and that at this point you're in the throw-everything-at-the-wall-and-hope-anything-sticks phase. Given the cordial and frank discussions I have had with Bill and the wisdom and efficiency demonstrated to date, I was hopeful we could avoid that. My fear is that now that our motion is ripe, that may be changing. I hope not.

Addressing your specific points:

There certainly was no "merger or consolidation" as that term is used in the case law. Merger or consolidation applies to some equity combination (i.e. a stock-for-stock transaction, a consolidation of sister companies with common ownership, etc.). I'm sure you'll find this when you read the case law. "Consolidated," as the term of art is used in balance-sheet jargon, has nothing to do with "merger or consolidation" in the case law. In all cases where one company buys the assets of another as a going concern, the acquired assets (and the revenue those assets produce, etc.) become part of the acquiring company's financials. This is not controversial.

More generally, if you believe there is an issue of fact on one of these theories, then I'm sure you'll put it in your opposition papers.

Second, the fact that a member of Pave-Mark's management stayed on with the operating assets and became an employee of the acquiring company is very common and does not lead to successor liability. This happens in virtually every deal of this type, including all of the deals that fill the case books rejecting the product-line exception to the rule against liability. This is inherent in any discussion of the product line exception. It is certainly not the law that an acquiring company has to fire all of the employees, management included, working on the product line and completely restaff the operations. If the Second Circuit wanted this to be the law, it would have adopted the product-line exception. The SDNY and the Second Circuit are not going to do tacitly what they purposefully rejected doing directly.

Third, the Ratchford declaration is perfectly appropriate. We're in federal court. I realize you may not practice there as often, but there is a specific federal provision authorizing the use of a declaration rather than an affidavit. I've already had this (non-)debate with Bill. The fact that we're reaguing this point really causes me doubt about the level of good faith in your attempts to gin up a defense to the motion. Again, the Ratchford declaration is very straightforward and non-controversial. By the way, I tried to locate Mr. Finley but never have found him; I don't know if he is still alive. It took weeks of digging to find Ratchford.

As to the burden of proof, as I'm sure you remember from the Anderson and Matsushita line of Supreme Court cases, the defendant has the burden of identifying the absence of geuine issues of material fact. As to an element of the case upon which the plaintiff has the ultimate burden, this involves merely identiying the issues upon wich the record lacks facts showing a geuine issue. Once the moving party makes this identification, the burden is on the nonmoving party to set forth evidence from which a reasonable fact-finder could find a genuine issue. I've briefed this so much, this paragraph comes solely from memory.

Also, as to discovery, Plaintiff has had months since Bill and I first discussed this successorship issue to pursue any discovery that Plaintiff thought proper. I'm not sure what that would be, since the Ratchford declaration pretty summarizes all that Avery knows.

As to the date of manufacture of the kettle, if you have evidence of the date of

1

manufacture of the kettle that contradicts Mr. Freire by your investigation, by all means, I'll be happy to look at it. I'm not sure why a business record from the person who actually bought the equipment would not be credited by you or the court. This undisputed fact is, of course, perfectly consistent with your complaint's allegation against Stimsonite and Avery as being solely successor claims. It would be frivolous to amend the complaint absent any evidence to contradict Mr. Freire.

We will not be withdrawing our motion. I urge you to consider dismissing the case so we can stop throwing good money after bad, which all that we'll be doing from here forward. Otherwise, I'll look forward to your papers. Please e-mail me a courtesy copy when you file

---

From: scott stern [mailto:sstern@WRSLAW.com]
Sent: Tue 1/8/2008 3:44 PM
To: Alten, John
Cc: William Hepner
Subject: RE: Disclafani

Dear Mr. Allen:

Thank you for your quick response.

Although my research has just begun and is far from complete, I would like to raise the following points in an effort to save us both time and, per your wishes, unnecessary expense to your client.

Of the four independent grounds for successor liability, one is that there is a merger or consolidation of buyer and seller. You only cite to a "de-facto merger" in your argument. Here, a review of Stimson's 10-Ks and other documents on file with the SEC reveal that the business operations of Pave-Mark were included in Stimon's "Consolidated Balance Sheet" and other financial documents.

A review of these documents also defeats your argument against a "de facto merger." As you are aware, William B. Finley was one of the three people who signed the Agreement as Pave-Mark's shareholders. I do not know if you are aware that Mr. Finkey was immediately named Vice-President of Stimson after the deal was concluded in May, 1995. Indeed, he was one of only 7 officers listed on the 10-K, along with 5 other Vice Presidents and the CEO. Notably, one of the other 5 Vice-Presidents is Thomas C. Ratchford, who you obtained an affidavit from instead of Mr. Finley. Mr. Finley - a party to the agreement - was certainly infinitely more competent to discuss, inter alia, his intentions when he signed the document and what his two cosigners did after the closing than was Mr. Ratchford. It must also be pointed out that Mr. Ratchford's affidavit was not properly sworn and will not be considered by the Court under New York law.

In sum, while there is much more I have learned and can specifically cite, the overwhelming evidence demonstrates that this was not the type of asset purchase agreement the Court's have contemplating in refusing to apply successor liability. At the very least, the above is sufficient to demonstrate that a question of fact exists regarding whether successor liability applies. This is especially so where you have moved for summary judgment before discovery has taken place. To be sure, although you correctly

2