UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RICHARD DESCLAFANI,

                Plaintiff,

          -against-

PAVE-MARK CORPORATION, STIMSONITE
CORPORATION, STIMSONITE CORPORATION,
as successor in interest to PAVE-MARK CORPORATION,
AVERY DENNISON CORPORATION and AVERY
DENNISON CORPORATION, as successor in interest
to STIMSONITE CORPORATION,

                Defendants.
-------------------------------------------------------------------X

**REPLY IN
SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OF
DEFENDANTS STIMSONITE
CORPORATION AND AVERY
DENNISON CORPORATION**

**07 CIV 4639 (SHS)(HP)**

## OVERVIEW

Plaintiff Richard Desclafani has had many months to try to develop facts supporting a claim of successor liability against Defendants Stimsonite Corporation and Avery Dennison Corporation – facts that Plaintiff was obliged, under the ethical rules, to have possessed when he filed the initial Complaint. But instead of developing these facts and making his case, Plaintiff falsely insists that Stimsonite and Avery Dennison bear the absolute burden of "proving the negative" of Plaintiff's successor liability claim and half-heartedly nit-picks the evidence produced by Defendants. Plaintiff prefers to act indignant about Defendants' brief rather than discuss, in a realistic way, the specific legal issue raised.

Setting aside Plaintiff's unwarranted vitriol, the relevant facts are not in dispute, and the relevant question comes down to: Does a Plaintiff demonstrate the requisite "continuity of ownership" to support a finding of a *de facto* merger when a minority owner of the asset-selling company goes to work for the publicly-traded, asset-buying company and (allegedly)

receives stock options?  Because there is no genuine issue of material fact regarding the non-applicability of successor liability in these circumstances, Stimsonite and Avery Dennison are entitled to summary judgment dismissing the Plaintiff's Complaint against them pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## LAW AND ARGUMENT

I.      **Plaintiff's Opposition Fails to Comply With Local Rule 56.1.**

Local Rule 56.1 requires:

> (b) The papers opposing a motion for summary judgment shall include *a corresponingly numbered paragraph responding to each numbered paragraph in the statement* [of undisputed facts] *of the moving party, and if necessary, additional paragraphs containing* a separate, short and concise statement of *additional* material facts as to which it is contended that there exists a genuine issue to be tried.

> (c) *Each numbered paragraph in the statement of* material facts set forth in the statement required to be served by the moving party will be deemed to be admitted *for purposes of the motion* unless *specifically* controverted by *a correspondingly numbered paragraph in* the statement required to be served by the opposing party.

(Emphasis in original.)    Plaintiff's Affirmation in Opposition fails to respond to the six numbered paragraphs in Defendants' Local Rule 56.1 Statement Of Facts Not In Dispute served in connection with their motion for summary judgment in November 2007.  While Plaintiff's brief is full of hyperbole and rhetoric, it is still not clear which elements of Defendants' Statement of Facts Not In Dispute Plaintiff contends are disputed.  For this reason alone, Defendants' motion for summary judgment should be granted.

II.    **Defendants Have Satisfied Their Burden Of Identifying The Deficiencies In Plaintiff's Successorship Claim; Plaintiff Has Failed To Satisfy Its Reciprocal Burden Of Demonstrating Why A Reasonable Fact-Finder Could Find Successor Liability.**

In an apparent attempt to distract from his own abject failure to develop any facts supporting his successorship claims, Plaintiff's brief in opposition mischaracterizes the burden on a party moving for summary judgment and casts unprofessional aspersions at Defendants and undersigned counsel. Plaintiff's rhetoric does not change the fact that, based on the undisputed facts before the Court, there is no genuine issue of material fact that Plaintiff can demonstrate regarding the exceptions to successor non-liability.

On summary judgment, the non-moving party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)). The facts in dispute must be *material* to the legal analysis at issue. The issue must be material to the outcome of the litigation and backed by evidence that would allow "a rational trier of fact to find for the non-moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986). This Court has explained that it is not a defendant's burden to "prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Wesolowski v. Bockelman, 506 F. Supp. 2d 118, 122 (S.D.N.Y. 2007). The court in Buja v. KCI Konecranes Int'l, 12 Misc. 2d 859, 815 N.Y.S.2d 412 (Sup Ct. 2006), a "*de facto* merger" case cited by Plaintiff in which summary judgment was affirmed, stated that "Plaintiff has the burden of showing a question of fact

3

sufficient to require a trial as to whether there was a '*de facto* merger' of Konecranes and Shepard Niles." *Id.* at 415.

Because the undisputed evidence demonstrates that there was not the requisite continuity of ownership between Pave-Mark and Stimsonite, there need not be a trial on the issue of *de facto* merger.

### III.    There Was No *De Facto* Merger Between Pave-Mark and Stimsonite Because There Was No Substantial Identity of Ownership.

Defendants' description of the facts is accurate not only in the most "hyper-technical" way, as Plaintiff alleges, but rather when you apply the controlling case law and a reasonable degree of business sophistication to the issue in question. Plaintiff asks this Court to loosen the "continuity of ownership" requirement such that if even a *de minimus* owner of the asset-selling company becomes a *de minimus* owner of the asset-purchasing company, successor liability would be inferred. Such a result would fly completely counter to all relevant precedent, let alone business-world realities. This question – does a plaintiff have to show a level of "continuity of ownership" from which one could infer actual control of the business? – is a pure question of law, not of fact.

As even Plaintiff acknowledges (Opposition, p. 11), a purchaser of assets *does not* impliedly assume the liabilities of the seller unless an exception applies. This is the rule. Court-implied successor liability is the exception, not the rule. Successor liability may be found only if one of the following limited exceptions applies: (1) if the buyer expressly assumed the seller's tort liabilities; (2) if there was a merger rather than an asset sale; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) if the transaction is entered into fraudulently to escape prospective tort liability. (*Id.*) As predicted by Defendants' motion,

Plaintiff focuses his argument on exception No. 2, arguing that the Pave-Mark-Stimsonite asset purchase constituted a *de facto* merger.

Plaintiff admits that the four factors required to be shown to demonstrate a *de facto* merger are (1) continuity of ownership, (2) the dissolution of the selling corporation immediately after the transaction, (3) the buyer's assumption of liabilities ordinarily necessary for the uninterrupted continuation of the seller's business, and (4) continuity of management, personnel, physical location, assets, and general business operation. (Opposition, pp. 11-12.) Plaintiff further agrees that the first of these tests, continuity of ownership, *must be* demonstrated regardless of the existence of the last three factors.[1] (Opposition, p. 12 (citing State of New York v. National Serv. Indus., 460 F.3d 201 (2d Cir. 2006).)[2]

Once you parse through the invective in Plaintiff's Opposition, it is clear that the relevant facts are not in dispute. Plaintiff does not dispute, and cannot dispute, that the Pave-Mark-Stimsonite asset purchase was an arm's-length transaction between ongoing, unrelated businesses. Plaintiff does not dispute, and cannot dispute, that Marty Smith, Pave-Mark's president and majority owner, used the asset purchase as a way to cash out of the business. Plaintiff does not dispute that Stimsonite, an *existing publicly traded* company, paid cash, not stock, to Pave-Mark in return for the Pave-Mark assets. Plaintiff's entire opposition is based on the apparent fact that Walter Finley, a Pave-Mark officer and owner of some minority shares,

---

[1] Defendants' motion for summary judgment focused on the lack of continuity of ownership and implicitly accepted *arguendo* that the last three factors might be found in the Pave-Mark-Stimsonite transaction.

[2] Sweatland v. Park Corp., 181 A.D.2d 243, 246, 587 N.Y.S.2d 54 (4th Dep. 1992), cited several times by Plaintiff, has been limited by Nat'l Serv. Indus. to the extent that Sweatland suggests a court could "weigh" other factors even in the absence of continuity of ownership. The opinions in Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 F. Supp. 834 (S.D.N.Y. 1977), Lumbard v. Maglia, Inc., 621 F. Supp. 1529, 1535 (S.D.N.Y. 1985) and Santa Maria v. Owens-Illinois, Inc., 808 F.2d 848, 860 (1st Cir. 1986), similarly have been limited by Nat'l Serv. Indus.. Not surprisingly, Plaintiff fails to quote the language in Ladjevardian,acknowledging that for "a *de facto* merger [to have] occurred there must be … a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock" and "[t]he fact that the two corporations have an identity of members or officers does not necessarily suggest that the corporations do not have a separate identity." Ladjevardian, 431 F. Supp. at 838.

was hired by Stimsonite to help run the former Pave-Mark plant once it was acquired by Stimsonite.[3]

The record evidenced by the SEC filings submitted to the Court, combined with the Ratchford Declaration submitted in support of Defendants' motion, makes clear what occurred:  Finley was apparently one of Marty Smith's confidants and had acquired some minority, non-controlling equity interest in Pave-Mark during his tenure there.  When Pave-Mark sold its assets to Stimsonite, Pave-Mark received cash.  While the Smith family retired, Stimsonite hired Finley to help manage the former Pave-Mark plant now owned by Stimsonite. Not surprisingly, he was compensated by Stimsonite consistent with going to work for Stimsonite.  In this way, Finley admittedly "profited" from the asset sale – as did any of the Pave-Mark employees who retained their jobs and did not have to go searching for new work. This happens all of the time when one company buys the assets of another as a going concern, as the Court well knows; why wouldn't the purchasing company want an experienced hand to help run its new facility?

These facts, accepted as true for the purpose of this motion, fall well short of the level of "continuity of ownership" required to overturn the presumption that an arm's-length asset sale should be treated like an arm's-length asset sale.  The purpose of the "continuity of ownership" test is to ensure that the ownership of the selling corporation does not constructively maintain control "in their assets after cleansing them of liability." Nat'l Serv. Indus., 460 F.3d at 211 (citations omitted).  In other words, the owners of an asset seller cannot artfully design an asset purchase to do constructively ("*de facto*") what they are avoiding doing directly.  The

---

[3]  As Defendants' counsel explained in the intercounsel e-mail that Plaintiff quite bizarrely attached to his Opposition, counsel has made substantial, unsuccessful efforts to try to locate Finley, which is much more than Plaintiff has done.  It is unclear if Finley is alive or where he lives.  Moreover, Defendants do not have the burden of "submit[ting] an affidavit" (Opposition, p. 16.) from him when the relevant facts are clear.  Plaintiff has had months to try to find Mr. Finley himself and subpoena him for a deposition.

unrebutted Ratchford Declaration demonstrates that the asset transaction was designed to allow the Smith family to exit the business and retire, not to unfairly scrub the assets of liabilities.[4] Nothing Plaintiff points out about the circumstances of the transaction is inconsistent with Ratchford's evidence on this point.

The cases all agree that the rehiring of management to run the purchased assets as a going concern *does not* give rise to a *de facto* merger. *See, e.g.,* fn. 2, *supra*. In fact, "continuity of management" is a separate element of the four-part *de facto* merger test described in Nat'l Serv. Indus.. *See* fn. 4, *supra*.

The result Plaintiff urges here would cause the exception to swallow the rule.[5] At bottom, Plaintiff is arguing that *any* "continuity" of ownership – that is, the fact that *anyone* with *any* ownership interest in the seller later acquires *any* ownership interest in the buyer, no matter how *de minimus* and regardless of the fact that the "ownership" in the purchasing company was acquired independent of the asset purchase – leads to a *de facto* merger and retroactively forces the purchasing company to assume the unidentified future tort liabilities of the seller. Not one of the cases cited in Plaintiff's Opposition stands for the proposition that a *de minimus* overlap between the equity ownership of the seller and the later equity ownership of the buyer is enough to satisfy the "continuity of ownership" requirement. Defendants have not found any precedent

---

[4] This is the irony of Plaintiff pointing out that Stimsonite presumably assumed the trade liabilities of Pave-Mark: Plaintiff is trying to have it both ways. If the buyer assumes any liabilities, then a plaintiff, as here, suggests that it assumed *all* liabilities. If the buyer does not assume any liabilities, then all of the creditors of the business, not just future tort plaintiffs, would cry that the transaction was designed to "cleanse" the assets of all liability. This is untenable.

[5] As an initial matter, Plaintiff has provided no evidence that Finley *actually acquired* any equity interest in Stimsonite after the transaction. Plaintiff makes reference to SEC filings that purportedly describe stock options given to Finley. It is far from clear that this happened, assuming *arguendo* that Finley was eligible for stock options as a Stimsonite executive. If the buyer does not assume any liabilities, then all of the creditors of the business, not just future tort plaintiffs, would cry that the transaction was designed to "cleanse" the assets of all liability. This is untenable. course, as Stimsonite was a publicly traded company, there was no real impediment to *anyone* acquiring some "ownership" of Stimsonite.

that so holds. This is especially true where the buyer is a publicly traded corporation with no effective means of ever keeping track of any person's "ownership" of the company.

This is the reason Defendants addressed the "product-line exception" in their initial motion papers. If the Court were to find "continuity of ownership" on these facts, then it might as well adopt the product-line exception, because no publicly traded company is ever going to be able to "prove the negative" – *i.e.*, that any rehired members of former ownership/management have not acquired some amount of the purchasing company's stock, via options in the normal course, on the open market or otherwise. The Second Circuit has specifically rejected the product-line exception, as Plaintiff acknowledges, but allowing Plaintiff to loosen the "continuity of ownership" test to the untenable extent urged here would completely flout Nat'l Serv. Indus..

To take the analysis a step further, because there was no substantial continuity of ownership, no reasonable fact-finder could conclude that the Pave-Mark-Stimsonite transaction constituted an artifice that Pave-Mark ownership used to "cleanse" the operation of tort liability while retaining control. As evidenced by the Ratchford Declaration, Finley never had "control" of Pave-Mark to "retain" – Smith did – and Finley was not paid Stimsonite stock in the asset deal. Under Plaintiff's proposed rule, to avoid an unintended assumption of liabilities, a publicly traded asset purchaser like Stimsonite would have to ban any management members rehired from the selling company from buying even publicly traded stock and from participating in even the most unremarkable stock-bonus program.[6] It would be difficult to concoct a more tenuous "continuity of ownership" than the one Plaintiff describes here, and allowing this theory to create an issue of fact would eviscerate both the language and the spirit of Nat'l Serv. Indus. and its

---

[6] Plaintiff acknowledges that Finley's apparent receipt of stock options from Stimsonite was not part of the Pave-Mark-Stimsonite assets purchase. (Opposition, p. 16.) And it is not surprising

brethren.  Plaintiff's rule would mean that an asset purchase is an asset purchase only if bare equipment, buildings or rank-and-file workers are acquired.  The governing law does not require this.  An asset purchase need not be a rummage sale to gain the presumption that historic liabilities are not assumed going forward.

## IV.    The "Mere Continuation" Exception Does Not Apply.

Plaintiff makes a half-hearted attempt to argue that, separate from the *de facto* merger issue, the "mere continuation" exception to non-liability applies here.  (Opposition, p. 22.)  Yet he acknowledges that a mere continuation "envisions a common identity of directors [and] stockholders."  (*Id.* (citation omitted).)[7]  This is patently not the case here.  As evidenced by the asset purchase agreement and the SEC filings before the Court, Pave-Mark had three shareholders; Stimsonite, a publicly traded company, presumably had thousands.  Before the transaction, Stimsonite was a legitimate ongoing company with its own products, its own shareholders and its own board of directors, the composition of which was not materially changed after the purchase of the Pave-Mark assets.  There is no genuine issue of material fact in this regard, and Defendants are entitled to summary judgment holding that the "mere continuation" exception does not apply.

## V.    The Court Should Not Be Distracted By Plaintiff's Unprofessional Attacks On Defendants' Counsel.

Rather than put forth his purported successorship case, Plaintiff fills his brief with inappropriate and irrelevant invective about Defendants and undersigned counsel.  This vitriol has no place in this discussion and cannot camouflage the fact that Plaintiff has brought putative successor claims without any legal or factual basis.

---

[7] In Cargo Partner AG v Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003), the Second Circuit noted that "[s]ome courts have observed the mere-continuation and *de facto* merger doctrines are so similar that they may be considered a single exception."  See also Lumbard, 621 F. Supp. at 1534 (cited by Plaintiff).

First, Plaintiff's brief states that "when Avery consented to our adjournment of this motion, it would do so only if we agreed to stay discovery." (Opposition, p. 5.) This is an abject misstatement: Defendants agreed to the extension of time to respond to the summary judgment motion with the express understanding that discovery would be stayed *as to the technical merits of the underlying product liability claim* (*i.e.*, discovery regarding the alleged product defect, Plaintiff's injuries, etc.), not as to the successorship issue. This was memorialized in the very language used in the joint motion filed on December 12, 2007 – the parties moved "for a stay of discovery *other than any discovery that may be relevant to the Defendants' previously filed Motion for Summary Judgment on successor liability.*" (12/12/207 Joint Motion, ECF R. 14, p. 1.) (Emphasis added.) Contrary to Plaintiff's contention, Plaintiff has not "been unable to conduct discovery" on the successorship issue. (Opposition, p. 8.) Nothing has stopped Plaintiff from conducting that discovery; he just hasn't. Not surprisingly, because the Pave-Mark assets have changed hands numerous times since the early 1990s and are no longer owned by either Stimsonite or Avery Dennison, Stimsonite and Avery Dennison have no relevant information beyond what has been submitted already. Mr. Ratchford, who provided the declaration in support of Defendants' motion, is not an Avery employee and left Stimsonite long ago; Defendants had to beat the bushes to locate him, just like Plaintiff would have had to.[8]

Second, as evidenced by Plaintiff's Opposition, Plaintiff bases his claim for *de facto* merger, and thus successor liability, on the fact that Walter Finley, apparently a minority owner of Pave-Mark, became an executive of Stimsonite after the asset purchase. (*See* Opposition, pp. 11-17.) Yet Plaintiff admits he did not "realize the facts surrounding Finley" until after Defendants filed their motion for summary judgment. Plaintiff discovered these facts

---

[8] Further, Fed. R. Civ. Pro. 56(f) requires a party, if it seeks to delay determination of a summary judgment motion in order to conduct relevant discovery, to submit a sworn affidavit explaining why such a delay is needed. No such affidavit has been provided.

"by some miracle"[9] when he "surreptitiously stumbled across Mr. Finley's name buried in the APA and again in documents filed by a defunct corporation with the Security and Exchange Commission over a decade ago."[10]  According to Plaintiff, if he had not done this in connection with responding to Defendants' motion, "we never would have known of his existence." (Opposition, p. 14.)  Plaintiff spends four pages of his Opposition congratulating himself for doing minimal investigation that he should have done long ago – regarding ultimately undisputed facts that, as discussed above, fall short of demonstrating a genuine issue of material fact for a jury regarding a *de facto* merger.  Plaintiff's blustery critique of Defendants' statement of facts (which Plaintiff, in the end, does not dispute) belies the fact that the May 2006 complaint naming Stimsonite Corp. and Avery Dennison Corp. was filed on a hope and a prayer, not upon knowledge, information and belief formed after investigation reasonable under the circumstances, as required by federal Civil Rule 11 and its state counterpart.  If Plaintiff's only basis for claiming successor liability is Finley, and Plaintiff did not learn about Finley's "existence" (whatever that means) until a couple of weeks ago, then what good-faith basis did Plaintiff have for filing suit against Stimsonite and Avery Dennison in the first place, other than as a hold-up?  It should not have taken a "miracle" for Plaintiff to enunciate a basis for dragging Defendants into court over a 17-year-old product they didn't make.  In this light, it is the height of hypocrisy for Plaintiff to accuse Defendants of unprofessional conduct.  Even more important, as outlined above, none of this creates a genuine issue of material fact under relevant precedent.

Plaintiff's request for discovery also lacks justification.  Since the successor issue was first raised informally with Plaintiff's counsel around Labor Day, Plaintiff has had many months to marshal its putative successorship case.  Since the filing of the Joint Motion To Stay

---

[9] Opposition, p. 16.

[10] Opposition, p. 14. Defendants have no idea what it means to "surreptitiously stumble" across information in documents filed with the Court and/or publicly available through the SEC.

Discovery alone, Plaintiff had five weeks to develop whatever facts he could to oppose Defendants' motion. Contrary to Plaintiff's contention, Plaintiff has not lacked the "opportunity to conduct discovery" (Opposition, p. 24), he just has chosen not to undertake any, likely because he could predict that doing so would be a waste of resources. The investigative legwork done by Defendants – which is to say, all of the legwork done by any party on the successorship issue in this case – is memorialized in Defendants' motion and the Ratchford Declaration.[11] The notion implicit in Plaintiff's brief is that Defendants have a duty to "prove the negative" when Plaintiff himself has done nothing to further his case. As discussed *supra*, Defendants have demonstrated that no merger, *de facto* or otherwise, occurred between Pave-Mark and Stimsonite because meaningful ownership and control of the assets was not retained by outgoing ownership, and the transaction was not an artifice for Smith or Finley to control the assets after cleansing them of liability.

Defendants have been haled into New York court over an injury allegedly caused by a product they had no involvement with and that has been out of the actual manufacturer's hands for at least 17 years.[12] In trying to figure out why they are being forced to appear before this honorable Court, Defendants were faced with the same task that Plaintiff should have performed before he ever filed his Complaint: doing the legwork to discern the details of a 12-year-old asset purchase to see if there was any reason to believe that the Asset Purchase Agreement's clear terms should be ignored. Defendants have done just that, as described *supra*. Plaintiff has no right to act indignant, let alone accuse Defendants and their

---

[11] Any relevant discovery would necessarily be of third parties since Marty Smith and Walter Finley are not affiliated with Defendants, and neither Defendant even possesses the relevant assets any longer.
[12] Plaintiff's Complaint purports to state claims against Stimsonite and Avery Dennison sounding *only* in successor liability.

counsel of wrongdoing, when their own brief demonstrates that their complaint allegations against Stimsonite and Avery Dennison were based on nothing more than wishful thinking.

## CONCLUSION

Plaintiffs have failed to identify facts creating a genuine issue of material fact regarding Defendants' purported successor liability.  Plaintiff's effort to expand the "continuity of ownership" test for *de facto* mergers to include even the most *de minimus* alleged overlap of ownership lacks any basis in precedent.  Among other things, Plaintiff's argument ignores the realities of how publicly traded companies are owned and controlled.

For the reasons stated above and in Defendants' Memorandum in Support of Motion for Summary Judgment, and in the interests of justice, the Court should enter an order granting summary judgment to Defendants Stimsonite Corporation and Avery Dennison Corporation.


Dated: Staten Island, New York
      January __, 2008

JOHN P. CONNORS, JR. (6514)
CONNORS & CONNORS, P.C.
766 Castleton Avenue
Staten Island, NY  10310
(718) 442-1700
Our File No.:DBS23483

JOHN M. ALTEN
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
(216) 583-7000

Attorneys for **Defendants**

13

**STIMSONITE CORPORATION and**
**AVERY DENNISON CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's ECF system this

_____ day of January, 2008, to all counsel of record as indicated below.

                              _____
                              JOHN P. CONNORS, JR. (6514)


TO:    WINGATE, RUSSOTTI & SHAPIRO
       Attorney for Plaintiff
       420 Lexington Avenue
       New York, NY 10170
       Attn: William P. Hepner, Esq.
       (212) 986-7353